## Wilson *v.* Union Transfer Company, Appellant.

*Negligence—Wagons—Conductor of trolley car—Evidence.*

In an action by the conductor of a trolley car against the owner of a wagon to recover damages for personal injuries, a verdict and judgment for plaintiff will be sustained where it appears that the wagon was heavily loaded with trunks, some of which projected over the side of the wagon, that when the car came abreast of the wagon, the driver saw it, but instead of driving straight ahead, turned his horses towards the curb thereby swinging the end of the wagon towards the car and striking and injuring the plaintiff.

Argued Dec. 12, 1905. Appeal, No. 16, Oct. T., 1905, by defendant, from judgment of C. P. No. 3, Phila. Co., Sept. T., 1903, No. 1152, on verdict for plaintiff in case of Jonathan D. Wilson v. Union Transfer Company. Before RICE, P. J., BEAVER, ORLADY, PORTER, MORRISON and HENDERSON, JJ. Affirmed.

Trespass to recover damages for personal injuries.   Before FINLETTER, P. J.

The facts are stated in the opinion of the Superior Court.

Verdict and judgment for plaintiff for $300.   Defendant appealed.

*Error assigned* was refusal of binding instructions for defendant.

*Lewis H. Van Dusen,* with him *John Scott, Jr.,* for appellant, cited : Dennison v. North Penn Iron Co., 22 Pa. Superior Ct. 219 ; Osterheldt v. Peoples, 208 Pa. 310 ; Patton v. Traction Co., 132 Pa. 76 ; Gilmore v. Ry. Co., 153 Pa. 31 ; Davidson v. Traction Co., 4 Pa. Superior Ct. 86.

*Francis G. Gallagher,* for appellee, cited : Osterheldt v. Peoples, 208 Pa. 310.

OPINION BY BEAVER, J., January 13, 1906 :

The refusal of the court to affirm the tenth point of the de-

fendant—"Under the facts, the verdict must be for the defendant"—is the only error assigned.    Was there anything in the case for the jury?

The plaintiff, in his testimony, states the case as follows: "On August 8, in the neighborhood of two o'clock in the afternoon, while going north on Twenty-first street, there was a car preceding my car, going north, and there was a union transfer wagon in front of that car, and the motorman rang him off.  And we were in the specified space of the transit company in the rear of the preceding car, and this car, after it had passed —the preceding car—the wagon attempted to pull in.    My motorman rung him off.    He turned towards the curb again, and seeing there was a straight way to go ahead, the motorman passed on.    Fully one-half of the car got past the wagon, and after I saw the front end of the car—as we all do—I knew there was space for the whole car to pass, if the front was passed, unless otherwise interrupted by the team pulling in. After I saw there was room I went on to collect my fares in the discharge of my duties.    While collecting the fares, whatever intervened between that time by the wagon pulling in, it struck me on the head and knocked me off and ran over my leg."

One of the plaintiff's witnesses said: "McKean street car I think it was.    The transfer company's wagon was ahead, loaded with trunks.    And the first car rung out and passed him, and he started to pull in again, and the motorman of our car rung him out, and he pulled out sufficient to clear the front part of the car.    Had he remained in the same position, he would have cleared it shortly, but attempting to pull to the curb, the tailboard of his wagon came towards the car and caught the conductor."

The version of the occurrence given by the driver of the wagon was: "The car rung for me to pull out, and I pulled out, and there was another car right behind him.    And he rung his bell, and I still stayed where I was, and when I seen it was a summer car I pulled over further towards the curb to get out of the road of him, and after I had pulled a little further somebody hallooed at me.    The conductor had struck himself, which I didn't see myself.    They told me I had hurt somebody."    In answer to the question "When you got the bell

what did you do?" he said "I still stayed out there and pulled a little more towards the curb."

The wagon of the defendant was loaded with trunks, twenty-seven in all, as the driver states, which, in his language, "hung out on the side," and that, by reason thereof, he was unable to see what was behind him. He admits, however, that he saw the car when it came abreast of him. This, of course, was notice that there was room to pass. Instead, however, of maintaining his position, he pulled, according to his own statement, nearer the curb. This swung the rear end of his wagon nearer the car (a summer car), passed a number of passengers who were on the running board, struck the conductor and knocked him from his car to the street, and avoided a passenger who was in his rear only by the latter jumping on the rear platform.

Who was responsible for the injury? The court could not say, as a matter of law, that the driver of the defendant's wagon was not responsible for it. If he had maintained the status quo when he saw the front of the car abreast of him, there would have been no accident. Was he bound to anticipate that, in turning further to the curb, the end of his wagon might be thrown nearer the car? Surely these were questions for the jury. They are not legal questions. They are those of fact and, as such, it was the province of the jury to deal with them. There is no criticism as to the manner in which they were submitted.

The facts were simple, the case was well tried, the jury had full instructions, the verdict was moderate, and we think the judgment should stand. It is affirmed.

MORRISON and PORTER, JJ., dissented.